UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL GUEVARA,<br><br>              Plaintiff,<br><br>     v.<br><br>MICHAEL ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>              Defendant. | NO. CV 06-02804 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

     Plaintiff Raul Guevara ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Alternatively, he asks for a remand. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. This matter is before the Court on the parties' Joint Stipulation ("Jt. Stip.") filed on June 15, 2007. For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

**PROCEDURAL HISTORY**

On February 26, 2003, Plaintiff protectively filed an application for disability benefits under Titles II and XVI of the Social Security Act. (Administrative Record ("AR") 53, 432-33). Plaintiff alleged disability due to three bulging discs in his neck and a shoulder injury which required reconstructive surgery. (AR 78).

The Agency denied Plaintiff's claims for benefits initially and upon reconsideration. (AR 45-49). On July 6, 2005, Administrative Law Judge ("ALJ") Mary L. Everstine conducted a hearing reviewing Plaintiff's claims. (AR 430-57). On August 8, 2005, ALJ Everstine issued a decision denying benefits. (AR 17-25). On September 14, 2005, Plaintiff sought review of ALJ Everstine's decision before the Appeals Council. (AR 11-12). The Appeals Council denied review on March 29, 2006 making the ALJ's decision the final decision of the Commissioner. (AR 4-6). Plaintiff commenced the instant action on May 9, 2006.

**FACTUAL BACKGROUND**

Plaintiff was born on November 13, 1962 and was forty-two years old at the time of the hearing. (AR 53). He alternately alleges that he has a twelfth-grade education or an eleventh-grade education. (AR 74, 433). Plaintiff asserted that he became disabled on September 13, 2001 when he suffered a work-related injury causing extreme pain to his neck and shoulder. (AR 295). He has not engaged in substantial gainful activity since the alleged onset date. (AR 70). Plaintiff previously worked as a mechanic and train track foreman. (AR 70, 433).

A.     **<u>Plaintiff's Testimony</u>**

On July 6, 2005, Plaintiff testified at the hearing before ALJ Everstine. (AR 430). Plaintiff testified that problems with his feet, shoulder, and neck limit his ability to work. (AR 434). He asserted that the surgery he underwent for his right-shoulder injury in January 2002 failed to alleviate the pain. (AR 434-35, 441, 443). Plaintiff stated that he relieves the pain by taking 800mg of Ibuprofen, as needed, and uses heat packs with herbs or an ice pack. (AR 435-36).

Plaintiff also reported that he has had a neck fusion in September 2003 which did not improve his neck pain. (AR 436, 442, 445). He noted that he received diagnostic discogram a month before the surgery but the doctors ended up "screwing the disc up, so they had to take the disc out." (AR 444). Plaintiff asserted that the doctors "basically never really found the problem, they just repaired damage that they did to that disc." (<u>Id.</u>)

Plaintiff testified that he is currently undergoing physical therapy which helps to relieve some of his muscle pain. (AR 436). Plaintiff complained that he is a constant state of pain. (AR 437). On a scale of one to ten, Plaintiff stated that the pain on an average days is a six and on the most severe days an eight. (<u>Id.</u>). Plaintiff reported that in an eight-hour period, he would need to lay down for four to five hours and that after sitting for ten to fifteen minutes he needs to lay down. (AR 438). He asserted that he is only able to turn his head one to two inches to the right or the left without feeling any pain or discomfort. (AR 446).

**B.     Relevant Medical History**

On September 18, 1999, treating physician, Dr. John C. Wei ordered an x-ray impression of Plaintiff's skull which showed normal results. (AR 125). A paranasal sinuses x-ray impression showed normal paranasal studies. (AR 126). On February 12, 2000, a lumbar spine x-ray impression revealed a L5-S1 interspace narrowing suggesting early disc degeneration and mild spondylosis of the lumbar spine. (AR 123). A coccyx x-ray impression showed an unremarkable coccyx. (AR 124).

On September 14, 2001, Dr. Wei examined Plaintiff after a shoulder injury he suffered at work, an acute sprain of the right shoulder. (AR 167). He prescribed Ibuprofen and Vicodin. (Id.). Dr. Wei noted Plaintiff would be able to return to work on September 24, 2001. (AR 166).

On September 18, 2001, an MRI of Plaintiff's right shoulder revealed degenerative hypertrophy of the AC joint with slight down sloping of the acromion, compressing on the supraspinatus tendon. (AR 129). It also showed a subtle focal signal intensity in the suraspinatus tendon insertion without adjacent joint effusion, most likely represent tendon degeneration, without evidence of significant tear. (Id.).

On January 18, 2002, orthopedic surgeon, Dr. Reese E. Polesky, conducted an exploration of Plaintiff's right rotator cuff with a partial acromionectomy and resection of the distal clavicle and acromioclavicular joint. (AR 285). The subacromial space was tight and

the rotator cuff was intact. (Id.). Dr. Polesky noted that Plaintiff would be disabled for several months following surgery. (Id.).

Following surgery, Plaintiff complained of numbness in area adjacent to his scar. (AR 283). In March and April 2002, Plaintiff reported posterior pain when bringing the shoulder down to 180 degrees against resistance. (AR 282). Plaintiff also continued to complain of numbness. (AR 281). In May 2002, Plaintiff reported shoulder pain at night when trying to sleep. (AR 279). On May 28, 2002, Dr. Polesky noted that Plaintiff's pain was decreasing. (AR 278). Plaintiff continued to make improvement in strength and mobility and report decreased pain from May 2002 through October 2002. (RT 272-78). In November 2002, however, Plaintiff began to complain of shoulder pain again. (AR 270-72).

On January 27, 2003, Dr. Polesky noted that following an x-ray of Plaintiff's cervical spine, a small disc bulge at C5-6, a right para-central disc bulge at C6-7, and a bulge at T2-3 were discovered. (AR 268-69). Dr. Polesky asserted Plaintiff had previously complained of neck pain radiating into his shoulder. (AR 269). Throughout Plaintiff's treatment by Dr. Polesky, he was also receiving physical therapy. (See AR 261-85). After several months of evaluation and pain management, Dr. Polesky referred Plaintiff for a nuerosurgical consultation for his neck condition. (AR 261-67).

On July 10, 2003, Dr. Michael Port performed a right C6 selective nerve root block under fluoroscopic guidance. (AR 370). He noted that if the block was not effective in reducing Plaintiff's pain, it should

be repeated the following week. (AR 371). On July 17, 2003, Dr. Port performed a cannulation and catheterization of the right-sided C6-C7 nerve root under fluoroscopy. (AR 349).

On February 19, 2004, Dr. Marshall Grode reported that Plaintiff was complaining of mid-thoracic pain which radiates into the anterior chest area. (AR 424). He also noted that there was no numbness or deformity noted. (Id.). Dr. Grode observed that the neck wound had healed well and that Plaintiff continued to have shoulder pain but no arm pain. (Id.).

**B.   Consultative Evaluation**

Dr. Frederick C. Workmon, an orthopedic surgeon, performed an orthopaedic evaluation of Plaintiff on October 23, 2003. (AR 300-05). Dr. Workmon found that Plaintiff is capable of lifting five to ten pounds occasionally or frequently. (AR 304). He noted that after Plaintiff heals from his neck surgery, he should be capable of lifting thirty to forty pounds occasionally and twenty pounds frequently. (Id.). Dr. Workmon determined that Plaintiff could stand, walk, and sit for six hours out of an eight hour day with normal rest periods. (Id.).

On January 5, 2004, Dr. Frank W. Cunningham also performed an orthopaedic evaluation of Plaintiff. (AR 307-11). Dr. Cunningham noted that Plaintiff had limited motion of both shoulders and sixty percent limitation in range of motion of the cervical spine. (AR 311). He asserted that the limitation in lumbar spine motion was "non-credible." (Id.). He assessed Plaintiff as being able to lift and carry twenty

pounds occasionally and ten pounds frequently. (Id.). Dr. Cunningham determined that Plaintiff could stand and walk for six hours out of an eight-hour day. (Id.). He reported that Plaintiff would be able to engage in moderate pushing and pulling with both upper extrmities but he would be restricted in overhead use of the right upper extremity. (Id.). Dr. Cunningham stated that Plaintiff would be limited in crouching or crawling but would not be limited kneeling and sitting. (Id.).

C.   **Non-Examining State Agency Physicians' Evaluations**

On April 23, 2003, a state agency physician reviewed Plaintiff's medical records. (AR 313-21). The physician determined that Plaintiff would be limited to carrying twenty pounds occasionally and ten pounds frequently. (AR 315). Plaintiff can stand, walk and sit for six hours of an eight hour day. (Id.). The physician also noted that Plaintiff is limited in pushing or pulling with his upper extremities and reaching overhead. (AR 315, 317).

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

7

months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[2] age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process discussed above. At the first step, the ALJ determined that Plaintiff

---

[2] Residual functional capacity is "what [one] can still do despite [his] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

9

had not engaged in substantial gainful activity since the alleged onset date. (AR 24). At step two, the ALJ found that Plaintiff suffers residual effects of fusion surgery at C6-7, residual effects of right rotator cuff acromionectomy, and resection of the distal clavicle, and early disc degeneration at L5-S1 with mild spondylosis. (Id.). The ALJ also found that these impairments were severe. (Id.). At step three, however, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments appearing in the "Listing of Impairments" set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.).

At step four of her analysis, the ALJ found Plaintiff retains the residual functional capacity to perform a significant range of light work. (AR 24). Specifically, the ALJ assessed that Plaintiff is able to lift and carry ten pounds frequently and twenty pounds occasionally, that he is able to stand, sit and walk for six hours of an eight hour day, that he is precluded from working overhead, crouching, crawling, and from frequent pulling, pushing or grasping with his right upper extremity. (Id.). At step five, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform, consistent with his RFC, age, education, work experience, and limitations. (AR 25). Therefore, the ALJ concluded that the Plaintiff was not disabled as defined in the Social Security Act, 20 CFR § 416.920(g), at any time through the date of the decision. (Id.).

\\
\\
\\
\\

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

\\
\\
\\
\\
\\

**DISCUSSION**

Plaintiff contends that the ALJ erred by improperly rejecting his subjective pain testimony. (Jt. Stip. at 4). For the reasons discussed below, the Court agrees that remand is required.

**A.    The ALJ Improperly Rejected Plaintiff's Subject Pain Testimony**

In assessing the credibility of a claimant's subjective complaints testimony, an ALJ must first determine whether the claimant produced medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged pain. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (citing Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986)). Objective medical evidence is required to establish the underlying impairment, but not the severity of the pain. Id.

The ALJ must then assess the "credibility of the claimant's testimony regarding the severity of symptoms." Smolen, 80 F.3d at 1281. An ALJ "cannot be required to believe every allegation of disabling pain." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1994) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). However, an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain, if the claimant has produced some objective medical evidence of an underlying impairment. Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001).

Here, the ALJ did not find that Plaintiff was malingering.[3] As such, the ALJ was required to provide clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of the symptoms. Rollins, 261 F.3d at 856-57.

Despite finding that Plaintiff had conditions that could produce pain, the ALJ found Plaintiff's testimony regarding his subjective pain complaints not credible. (AR 21). The ALJ discredited Plaintiff's testimony because "[a]lthough [Plaintiff] has had two separate surgical procedures, the medical reports describing this condition do not corroborate [Plaintiff's] allegations of debilitating pain." (Id.). The ALJ also noted that Plaintiff "was able to sit for 45 minutes at the hearing with no sign of discomfort[.]" (Id.). The ALJ's reasons for finding Plaintiff not credible are legally insufficient.

As previously discussed, the ALJ cannot reject Plaintiff's subjective pain testimony solely because the medical evidence does not fully substantiate Plaintiff's subjective pain complaints. Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."). Moreover, the ALJ's observation that Plaintiff did not appear to be in any discomfort during the hearing is not a clear and convincing reason to reject his testimony. See Perminter v. Heckler, 765 F.2d 870,

---

[3] In his consultative examination of Plaintiff, Dr. Cunningham noted that the lumbar spine motion and straight-leg raising findings were "non-credible." (AR 311). However, Dr. Cunningham did not find that Plaintiff was a malingerer and concluded that Plaintiff had several limitations. (See id.).

13

872 (9th Cir. 1985) (disapproving of "sit and squirm" jurisprudence); cf. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (finding that ALJ's observation that, at the hearing, the plaintiff exhibited inconsistent symptoms was appropriate and distinguishable from a finding that the plaintiff "failed to manifest external symptoms of his alleged pain"). As such, the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective pain testimony. Accordingly, remand is proper.

**B.     Remand Is Required to Remedy Defects in the ALJ's Decision**

Remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000). Because the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective pain testimony, the case must be remanded to remedy this defect. Upon remand, the ALJ must reconsider Plaintiff's testimony and, if necessary, give clear and convincing reasons for finding Plaintiff not credible.[4] Moreover, the parties shall not be precluded from addressing any other issues upon remand.

\\

\\

---

[4] The ALJ may consider the following factors when weighing the claimant's credibility: (1) her reputation for truthfulness; (2) inconsistencies either in her testimony or between her testimony and her conduct; (3) her daily activities; (4) her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 17, 2007.

/S/
_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE